## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSHUA A. WHITENER, SR., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 10-1552** |
| **PLIVA, INC., ET AL.** | **SECTION "L" (4)** |

### ORDER & REASONS

Before the Court is Defendant Teva Pharmaceutical, Inc.'s Motion to Dismiss for (Rec. Doc. 12).  The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

## I.    BACKGROUND

This pharmaceutical products liability action arises out of congenital injuries to Lucas Whitener, son of Plaintiffs Joshua A. Whitener, Sr., and Lindsey C. Whitener, as well as injuries to Mrs. Whitener, allegedly caused by the anti-emetic drug metoclopramide.  Plaintiffs allege that while Mrs. Whitener was pregnant with Lucas, she was prescribed metoclopramide to treat nausea and morning sickness.  Metoclopramide is the generic form of the name brand drug Reglan.  Plaintiffs allege that metoclopramide was not approved by the FDA for prescription to pregnant women and that the prescription of Mrs. Whitener's metoclopramide was off-label.  Plaintiffs allege that the metoclopramide caused Lucas to be born with severe developmental disabilities, and has also physically injured Mrs. Whitener.

Defendants are a variety of pharmaceutical entities alleged to have designed, manufactured, marketed, or sold metoclopramide.  Teva Pharmaceutical Industries, Ltd. ("Teva Limited"), a named Defendant, is a foreign corporation organized under the laws of Israel.  Petition at ¶ 2.f.  Plaintiffs state in their petition that the pills Mrs. Whitener took were labeled

"PLIVA 430."   Complaint ¶ 45.  Plaintiffs do not expressly allege which of the Defendant pharmaceutical entities manufactured the metoclopramide pills that Mrs. Whitener was prescribed or which were involved in the chain of commerce which delivered the pills to her. Rather, Plaintiffs allege in the alternative that each of the Defendant pharmaceutical companies designed, manufactured, marketed, and/or sold metoclopramide.  Further, Plaintiffs allege that in light of published studies the Defendants knew or should have known of the risk of birth defects if metoclopramide is prescribed during pregnancy; that the defendants failed to warn of that risk, and in fact actively concealed it; and that in spite of that known risk, defendants marketed or otherwise promoted metoclopramide for off-label prescription to pregnant women.

## II.     PRESENT MOTION

Defendant Teva Pharmaceuticals Industries, Ltd., ("Teva Limited") has filed a motion to quash service or to dismiss.  (Rec. Doc. 60).[1]  Teva Limited argues that it was not properly served under the Hague Convention, that it is not subject to personal jurisdiction in Louisiana, and that the complaint fails to state a claim against it.  Plaintiffs respond that service was proper and that they need jurisdictional discovery regarding personal jurisdiction over Teva Limited.

## III.    LAW & ANALYSIS

### A.     Motion to Quash Service of Process

Teva Limited is an Israeli corporation.  Process may be served on an individual in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Services Abroad of Judicial and Extrajudicial Documents ["the Hague Convention"]."  Fed. R. Civ. P. 4(f)(1).  The

---

[1]Teva Pharmaceuticals USA, Inc., a Delaware corporation and a subsidiary of Teva Limited, is also a Defendant.  Teva Pharmaceuticals USA has not joined in this motion.

Hague Convention sets forth two ways in which process can be served on an individual in a

signatory state:

> The Central Authority of the State addressed shall itself serve the
> document or shall arrange to have it served by an appropriate agency, either–
> (a) by a method prescribed by its internal law for the service of documents
> in domestic actions upon persons who are within its territory, or
> (b) by a particular method requested by the applicant, unless such a
> method is incompatible with the law of the State addressed.
> Subject to sub-paragraph (b) of the first paragraph of this article, the
> document may always be served by delivery to an addressee who accepts it
> voluntarily.
> If the document is to be served under the first paragraph above, the
> Central Authority *may* require the document to be written in, or translated into,
> the official language or one of the official languages of the State addressed.

Hague Convention, art. 5, Nov. 15, 1965, 20 U.S.T. 361 (emphasis added).  Thus, a signatory to

the Hague Convention may require translation into the official language of documents served

through the Central Authority of that state, but the Convention itself does not require translation.

Neither party disputes that Israel is a party to the Hague Convention and that service

through the Hague Central Authority for Israel is an appropriate means of complying with Rule

4(f)(1).  Teva Limited admits that it was served with the complaint through the Hague Central

Authority for Israel, but contends that service was deficient because the complaint was not

translated into Hebrew.  However, Teva Limited has not established that Israel in fact requires

translation.  Neither of the parties have supplied or cited anything purporting to be an authentic,

official statement of Israeli law governing requirements for service of process through the Hague

Convention.  Without an affidavit from a person familiar with the requirements of Israeli law on

this point, or some citation to an applicable provision, the Court will not quash service for failure

to comply with a requirement that has not been shown to exist.[2]  The motion is denied insofar as it seeks to quash service of process.

**B.      Motion to Dismiss for Lack of Personal Jurisdiction**

"The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a *prima facie* case if the district court rules without an evidentiary hearing."  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)).  "Proof by a preponderance of the evidence is not required."  *Id.* (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)).  In resolving personal jurisdiction, the court may review "pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof." *Command-Aire Corp. v. Ontario Mech. Sales & Servs., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992) (citing *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985)).  However, the Court must take as true the uncontroverted allegations in the complaint, and conflicts between the facts contained in the parties' affidavits, if provided, must be resolved in favor of the plaintiff.  *See Johnston*, 523 F.3d at 609 (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)).

A federal court may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant, and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.

---

[2]A website maintained by the Hague Conference on Private International Law suggests that in Israel, "Service requested under the Convention requires that the documents to be served are written in or translated into Hebrew, English, or Arabic."  Israel – Central Authority & practical information, *Hague Conference on Private International Law*, http://www.hcch.net/index_en.php?act=authorities.details&aid=260 (last visited June 17, 2011).

*See Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).  This Court is seated in the Eastern District of Louisiana and therefore looks to Louisiana's long-arm statute.  "The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits.  Therefore, the inquiry is whether jurisdiction comports with federal constitutional guarantees."  *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (citing *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)).  Due process in the personal jurisdiction context requires that (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

With regard to the minimum contacts requirement, a defendant's contacts with a forum may be "general" or "specific."  *Cent. Freight Lines, Inc. v. APA Trans. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (citing *Alpine View Co. Ltd. v. Altas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).  Specific jurisdiction requires that (1) the defendant has purposefully availed itself of the privileges of conducting activities in the forum state; and (2) the litigation results from alleged injuries that arise out of or relate to those activities.  *See Alpine*, 205 F.3d at 215 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

On the other hand, general jurisdiction exists if a defendant's contacts with the forum state are "substantial and 'continuous and systematic' but unrelated to the instant cause of action."  *Cent. Freight Lines*, 322 F.3d at 381 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)).  "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'"  *Jackson*,

615 F.3d at 584 (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).  "To confer general jurisdiction, a defendant must have a business presence in the forum state." *Id.* (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987)).  "'General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed.'" *Johnston*, 523 F.3d at 610 (*Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)).  These contacts are to be considered *in toto*, excluding any "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts."  *Id.*

If a plaintiff demonstrates that the defendant has minimum contacts with the forum state, personal jurisdiction exists unless the defendant can make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).  In assessing traditional notions of fair play and substantial justice, a court must consider the following factors: (1) the burden upon the nonresident defendant to litigate in that forum; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining the most efficient and convenient relief; (4) the judicial systems's interest in efficient resolution of the controversies; and (5) the several states' shared interest in furthering substantive social policies.  *See Johnston*, 523 F.3d at 615; *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 814 (5th Cir. 2006).

Ordinarily, "the mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent" based on the subsidiary's contacts with the forum. *See Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990).  However, "there may be instances in which the parent so dominates the subsidiary that they do not in reality constitute separate and distinct corporate entities."  *Id.* (quotation omitted); *see also Hargrave v.*

-6-

*Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) ("[A] close relationship between a parent

and its subsidiary may justify a finding that the parent 'does business' in a jurisdiction through

the local activities of its subsidiaries.").  Factors that are relevant in determining whether the

parent and subsidiary should be treated collectively for personal jurisdiction purposes include:

> (1) whether the parent owns 100% of the subsidiary's stock; (2) whether the two
> corporations maintain separate headquarters; (3) whether the parent and
> subsidiary share common officers and directors; (4) whether corporate formalities
> are observed; (5) whether separate accounting systems are maintained; (6)
> whether the parent exercises complete authority over general policy; and (7)
> whether the subsidiary exercises complete authority over daily operations,
> including research and development, marketing, and supply.

*DP Solutions, Inc. v. Rollins, Inc.*, 34 F. App'x 150, 2002 WL 494672, at *5 (5th Cir. Mar. 14,

2002) (citing *Dalton*, 897 F.2d at 1363).  The Fifth Circuit "has not clearly articulated the

amount of control necessary to establish such a relationship" but "the alter ego test for attribution

of contacts, *i.e.*, personal jurisdiction, is less stringent than that for liability."  *Id.* (quotation

omitted).

     As noted, the burden is on Plaintiffs to establish a *prima facie* case of personal

jurisdiction over Teva Limited.  In this case, the complaint itself does not suffice to establish the

*prima facie* case.  The only specific references to Teva Limited in the complaint are those

identifying it as a Defendant and as an Israeli Corporation.  Pet. at ¶ 2.f.  There are no specific

allegations regarding contacts between Teva Limited and Louisiana.  Plaintiffs allege only

generally and in the alternative that:

> each defendant is qualified to do and/or doing business in this State and within
> this jurisdiction; carries on a continuous and systematic part of its business within
> this State and jurisdiction; transacts business in this State and jurisdiction; caused
> harm or tortuous [sic] injury within this State and jurisdiction by an act or
> omission in this State and or jurisdiction and/or by an act or omission outside of
> this State; and/or is domiciled or resides in St. John the Baptist Parish.

Pet. at ¶ 3.  The complaint is devoid of other allegations regarding Teva's specific connections to

Louisiana, or its relationship with its subsidiary, Teva Pharmaceuticals USA, which is also a

Defendant in this suit and does not dispute personal jurisdiction.

  For its part, Teva Limited provides an unsworn affidavit from a Vice President of

Finance setting forth the lack of contacts between the company and Louisiana.  The affidavit

states that Teva Limited:

> does not engage and has not been engaged in the transaction of business in
> Louisiana at any time, nor does it derive any revenue from the sale of products or
> other business operations in Louisiana or elsewhere in the United States.  Insofar
> as the shipping destination of any products manufactured or sold by Teva Limited
> is geographically located in the United States, title to such goods passes from
> Teva Limited to its customers outside of the United States.

The affidavit also sets forth specific types of contacts it does not have with Louisiana, including

the lack of an authorized agent for service in Louisiana, bank accounts or property in Louisiana,

and advertising directed specifically toward Louisiana.  Furthermore, Teva Limited asserts that it

has never "manufactured, marketed, sold or advertised metoclopramide in the United States,

either directly, through Teva USA, or otherwise."

  In response, Plaintiffs submit a number of exhibits to show ties between Teva Limited

and the United States, including press releases, news reports, pages from websites, and SEC

filings.  Plaintiffs also submit a letter addressed to the FDA commenting on proposed regulations

signed by a Teva Limited employee, as well as individuals representing the United States

subsidiary and another division.  According to Plaintiffs, these materials raise enough questions

regarding contacts between the United States and Teva Limited, or the relationship between

Teva Limited and Teva USA, to warrant personal jurisdiction discovery.  Reading these

materials generously, they suggest little more than the uncontroversial proposition that Teva

Limited is a global pharmaceuticals company with some business connections to the United States, either directly or through subsidiary corporations.  They do not speak to any direct contacts between Teva Limited and Louisiana.  Nor do they establish that Teva USA is a mere alter ego of Teva Limited.

Plaintiffs also argue that Teva Limited has been a party to other litigation in the United States.  *E.g.*, *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 702 F. Supp. 2d 514 (E.D. Pa. 2010).  However, the fact that Teva Limited was sued in the Eastern District of Pennsylvania for alleged antitrust violations arising out of contractual settlement of a prior patent lawsuit has little to do with amenability to suit in Louisiana for damages caused by a generic drug. Likewise, *Teva Pharmaceuticals USA, Inc. v. Abbott Laboratories*, 580 F. Supp. 2d 345 (D. Del. 2008), involved antitrust violations.  These cases do not suggest contacts between Teva Limited and Louisiana.

Finally, Plaintiffs submit a scanned copy of the packaging of a different drug, labeled "Manufactured In Israel By: TEVA PHARMACEUTICAL IND. LTD., Jerusalem 91010 Israel." Plaintiffs assert that they recently purchased that drug in Baton Rouge, suggesting that Teva Limited does ship products for sale in Louisiana.  However, the packaging they provide is not for metoclopramide.

Plaintiffs do not clearly express whether they are arguing for either general or specific personal jurisdiction over Teva Limited.  Certainly, none of the cases cited or exhibits provided suggest that purposeful activities by Teva Limited in Louisiana gave rise to the Plaintiffs' injuries.  Plaintiffs have not submitted anything to indicate that Teva Limited was involved in producing or marketing the pills in question, and specific jurisdiction is wholly unsupported.  If Teva Limited is subject to personal jurisdiction in Louisiana, it must be general jurisdiction. However, the materials do not appear to establish a *prima facie* case of continuous and

systematic contacts with Louisiana.  Perhaps recognizing that deficiency, Plaintiffs urge that they

should be entitled to jurisdictional discovery.

Curiously, Plaintiffs have already had an opportunity for jurisdictional discovery.  Teva

Limited is evidently a party to numerous other metoclopramide lawsuits, including a

consolidated mass tort proceeding in state court in Philadelphia, Pennsylvania.  The Court of

Common Pleas in Philadelphia has evidently ordered discovery relevant to personal jurisdiction

over Teva Limited, including depositions of corporate representatives.  Teva Limited offered to

facilitate Plaintiffs' participation in those depositions, and filed a motion with the United States

Magistrate Judge to permit out-of-time discovery.[3]  Plaintiffs' counsel declined, and the

Magistrate Judge denied the motion, based on an inability to agree with Teva Limited regarding

the scope of those depositions, what written discovery would be produced in advance, and

whether participating in these depositions would limit subsequent discovery.  (Rec. Docs. 92,

93).  The Court is disappointed that the parties were not able to cooperate and complete this

discovery in a manner that would have promoted judicial efficiency and established a better

record for this motion.

The allegations in the complaint, as relevant to asserting personal jurisdiction over Teva

Limited, are thin.  Moreover, Plaintiffs' supplemental evidence is at best equivocal and does not

suggest minimum contacts giving rise to general or specific jurisdiction over Teva Limited in

Louisiana.  The affidavit provided by Teva Limited, although not notarized, tends to support its

position that sufficient contacts with Louisiana are absent.  Nonetheless, the Court is not ready to

---

[3]At the time the motion was filed, the parties had not yet conducted a discovery
conference pursuant to Federal Rule of Civil Procedure 26(f), and accordingly written discovery
was not available pursuant to Rule 26(d)(1).

rule on the motion to dismiss for lack of personal jurisdiction at the present time.  The discovery taken in connection with the Philadelphia mass tort litigation, although unlikely to address contacts between Teva Limited and Louisiana, may be relevant to the relationship between Teva Limited and its domestic subsidiary.  Thus, in the interest of justice and judicial economy, it is appropriate that Teva Limited provide any deposition transcripts and associated discovery materials that have already been produced in litigation in other jurisdictions to the Plaintiffs, before the Court rules on the motion to dismiss.  This will not have any impact on what discovery may later be appropriate in this case.  Accordingly,

IT IS ORDERED that Teva Limited shall promptly provide to Plaintiffs a copy of transcripts of the jurisdictional discovery in which Teva Limited invited Plaintiffs to participate, as well as exhibits to those depositions, costs to be borne by the Plaintiffs.  Within two weeks after those materials are provided, the parties shall file supplemental briefs addressing how, if at all, those materials affect the personal jurisdiction analysis as it pertains to Teva Limited and Louisiana.

New Orleans, Louisiana, this 17th day of __June__, 2011.

UNITED STATES DISTRICT JUDGE

-11-