UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSHUA A. WHITENER, SR., ET AL. | CIVIL ACTION |
| VERSUS | NUMBER 10-1552 |
| PLIVA, INC., ET AL. | SECTION "L" (4) |

### ORDER & REASONS

Before the Court is a Motion for Judgment on the Pleadings (Rec. Doc. 112) filed by certain Defendants. The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

### I. BACKGROUND

This pharmaceutical products liability action arises out of congenital injuries to Lucas Whitener, son of Plaintiffs Joshua A. Whitener, Sr., and Lindsey C. Whitener, as well as injuries to Mrs. Whitener, allegedly caused by the anti-emetic drug metoclopramide. Plaintiffs allege that while Mrs. Whitener was pregnant with Lucas, she was prescribed metoclopramide to treat nausea and morning sickness. Metoclopramide is the generic form of the brand-name drug Reglan. Plaintiffs allege that the generic drug, metoclopramide, was not approved by the FDA for prescription to pregnant women, that it did not contain adequate warnings, and that the prescription was off-label. Plaintiffs allege that the metoclopramide caused Lucas to be born with severe developmental disabilities, and has also caused tardive dyskinesia in Mrs. Whitener.

Plaintiffs filed suit in the 40th Judicial District Court for the Parish of St. John the Baptist against a variety of pharmaceutical entities alleged to have designed, manufactured, marketed, or sold metoclopramide, as well as the doctor and clinic. (Petition at ¶ 2.) The claims against the doctor and clinic were jointly dismissed in state court on grounds of prematurity (Rec. Doc. 1-3

at 39) and the pharmaceutical Defendants removed to this Court. Plaintiffs do not expressly allege which of the pharmaceutical Defendants manufactured the metoclopramide pills that Mrs. Whitener took or which were involved in the chain of commerce which delivered the pills to her. Rather, Plaintiffs allege in the alternative that each of the Defendant pharmaceutical companies designed, manufactured, marketed, and/or sold metoclopramide. Further, Plaintiffs allege that in light of published studies the Defendants knew or should have known of the risk of birth defects if metoclopramide is prescribed during pregnancy; that the defendants failed to warn of that risk, and in fact actively concealed it; and that in spite of that known risk, defendants specifically marketed or promoted metoclopramide for off-label prescription to pregnant women.

## II.     PRESENT MOTION

Certain Defendants have filed a joint motion for judgment on the pleadings. (Rec. Doc. 60). They rely on the Supreme Court's recent opinion in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), which held that state-law claims against generic drug manufacturers based on failure to provide additional warnings of the risks of a generic drug are expressly preempted by federal law.

In response, Plaintiffs argue that *Mensing* does not control the present case because of intervening amendments to federal pharmaceutical law and because Mrs. Whitener was prescribed metoclopramide "off-label" while she was pregnant. Plaintiff also argues that *Mensing* did not address claims against defendants who specifically promoted metoclopramide for off-label prescription to pregnant women in violation of federal rules and regulations.

## III.    LAW & ANALYSIS

### A.     Standard on Motions for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

-2-

12(c) is subject to the same standard as a motion pursuant to Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "[A]ll well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010). "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). The court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

**B.     Claims Not Brought Pursuant to the Louisiana Products Liability Act**

Defendants first move to dismiss all Plaintiffs' negligence claim as precluded by the Louisiana Products Liability Act. The LPLA provides the only remedies available under Louisiana law against the manufacturer of a product. *See* La. Rev. Stat. § 9:2800.54(B); *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002).

In their Petition, Plaintiffs allege that:

Defendants, or one or more of them, have been negligent in the following respects, *inter alia*: (1) failure to properly prescribe medication to the patient(s); (2) failure to properly monitor the patient(s); (3) failure to properly evaluate the patient(s); (4) failure to adequately and properly warn and/or advise the patient; and (5) failure to adequately and properly warn and/or advise other health care providers and pharmacies.

(Petition at ¶ 88). The first three allegations clearly refer to the doctor and clinic originally

named as defendants but dismissed for prematurity.  The latter two allegations conceivably relate to the pharmaceutical Defendants.

The Court previously denied a motion filed by Defendant Teva Pharmaceuticals USA, Inc., to dismiss non-LPLA.  (Rec. Doc. 36).  The Court held that Plaintiffs had sufficiently alleged in the alternative that Teva was either a manufacturer or a non-manufacturing seller.  A claim against a non-manufacturing seller is not governed by the LPLA, and the seller is responsible for damages caused by a product "only if he knew or should have known that the product sold was defective, and failed to declare it."  *See Slaid v. Evergreen Indem., Ltd.*, 32,363, p. 6 (La. App. 2 Cir 10/27/99); 745 So. 2d 793, 797.  Thus, Plaintiffs have adequately stated a non-LPLA claim premised on non-manufacturing seller liability, but that claim must still survive preemption.

**C.**     **Preemption**

The Supreme Court of the United States recently held that state-law failure-to-warn claims against manufacturers of generic drugs are preempted by federal law.  *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011).  Generic drug manufacturers must use the same label and warnings as those approved by the FDA with respect to the brand-name version of the drug. Generic drug manufacturers cannot unilaterally change that label or add inconsistent or additional warnings.  Therefore, generic manufacturers cannot simultaneously comply with federal law and also give additional warnings required by state tort law.  Accordingly, federal law  preempts state tort law as a matter of conflict preemption.  *See id.* at 2577-78.  The curious effect of *Mensing* is that a failure-to-warn claim against a manufacturer of a generic drug is preempted because of limitations on the generic manufacturer's ability to provide additional warnings, while a claim against the manufacturer of a chemically identical name-brand version

are not preempted because the name-brand manufacturer is permitted under federal regulations to unilaterally add or amend warnings. The Court acknowledged that this outcome "makes little sense." *Id.* at 2581. Nonetheless, the holding is clear: state-law failure-to-warn claims against a generic drug manufacturer are preempted by federal law.

Defendants argue that *Mensing* plainly defeats Plaintiffs' claims. They argue that the crux of the Petition is failure to warn of the risks metoclopramide posed to pregnant women. As generic manufacturers, *Mensing* held that as a matter of federal law Defendants could not provide additional warnings. Therefore, any and all state-law claims premised on a failure to provide those additional warnings are preempted. Defendants cite a flood of post-*Mensing* cases from this District and elsewhere dismissing failure-to-warn claims against generic drug manufacturers as preempted.

In response, Plaintiffs emphasize two differences between this case and *Mensing*: (1) when Mrs. Whitener was prescribed the metoclopramide, and (2) the fact that the drug was prescribed "off-label" while she was pregnant.

First, Plaintiffs argue that Mrs. Whitener was prescribed metoclopramide in 2009 after Congress passed the Food and Drug Administration Amendments Act of 2007 (FDAAA), 121 Stat. 823. The plaintiffs in *Mensing* were prescribed metoclopramide in 2001 and 2002, and thus the Supreme Court observed in a footnote that it "express[ed] no view on the impact of the 2007 Act." *See Mensing*, 131 S. Ct. at 2574 n.1. Plaintiff points out this difference but does not explain how it changes the outcome. It is not enough for Plaintiff to attempt to put the ball back into Defendants' court by arguing that "Defendants have made no reference whatsoever in their motion to the express limitation of the *Mensing* holding." (Rec. Doc. 119 at 2). Plaintiffs have not articulated, and the Court cannot find, any changes in the FDAAA to a generic drug

manufacturer's ability to alter the FDA-approved brand-name label for a drug. In the absence of any such change, the *Mensing* conflict preemption analysis does not change because compliance with both state and federal requirements remains impossible. Defendants cite an unpublished opinion from the District Court of New Jersey reaching the same conclusion that "the *Mensing* analysis is not affected by FDAAA." *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, MDL 2243, No. 08-008, 2011 WL 5903623, at *7 (D.N.J. Nov. 21, 2011). The FDAAA is a red herring on this issue and does not preserve Plaintiffs' claims.

Second, Plaintiffs argue that *Mensing* does not apply because she was prescribed metoclopramide for morning sickness while pregnant and that prescription was "off-label," or for a purpose not approved by the FDA. According to Plaintiff, "with respect to the use of metoclopramide for the treatment of morning sickness or nausea and vomiting in pregnancy, there is no federally mandated warning label because the drug has not been approved for that use." (Opp. at 13). As best the Court can discern, this argument misunderstands the federal regulatory scheme.

As the Supreme Court explained in *Mensing*, "a manufacturer seeking federal approval to market a new drug must prove that it is safe and effective and that the proposed label is accurate and adequate." 131 S. Ct. at 2574. After the FDA has approved that drug and its label, another manufacturer may seek approval to develop and sell a generic version of the drug "simply by showing equivalence to a reference listed drug that has already been approved." *Id.* In doing so, the generic manufacturer must propose the exact same labeling as that approved for the brand-name drug. *See id.* Thus, there is only one approved label and the generic manufacturer must use it.

The label may reflect that the drug is approved only for some indications or medical

purposes, but it is still the label for the drug. The FDA-approved purposes will limit how the manufacturer may market the drug, but not how the drug may be prescribed by doctors. *See, e.g.*, 21 C.F.R. § 202.1(e)(4) (prohibiting advertisements which "recommend or suggest" any use that is not in the labeling" approved by the FDA); 21 U.S.C. § 396 ("Nothing in this chapter shall be construed to limit or interfere with the authority of a health care practitioner to prescribe or administer any legally marketed device to a patient for any condition or disease within a legitimate health care practitioner-patient relationship."). The purpose for which a generic drug is eventually prescribed to a particular patient *by his or her doctor* is irrelevant to whether the manufacturer labeled the drug in the manner required by the FDA and does not mean that the drug was no longer "FDA-approved." Plaintiffs certainly cite no authority for their unusual argument that because the labeling for Reglan (and consequently for metoclopramide) did not expressly recommend prescription during pregnancy, "there is no federally mandated warning label because the drug has not been approved for that use." (Rec. Doc. 119 at 13). There was an FDA-approved label without which Defendants could not have sold metoclopramide. Defendants had no choice but to use that label and could not say more in warning, just as the generic manufacturers in *Mensing* could not.

Thus, the fact that a doctor prescribed metoclopramide to Mrs. Whitener for morning sickness while pregnant does not distinguish this case from *Mensing*. Defendants were bound by federal law to use the FDA-approved label and could not provide the additional warnings Plaintiffs allege should have been given. Plaintiffs' failure-to-warn claims are preempted. As discussed above, Plaintiffs' alternative theory of non-manufacturing seller liability also depends on a failure to warn, and that claim is preempted as well.

However, *Mensing* did not address claims predicated on a defendant's alleged violation

of federal regulations.  The Petition can potentially be construed as alleging that Defendants marketed or promoted metoclopramide for off-label purposes in a manner that violated federal law:

> Despite actual or constructive knowledge of the narrowly approved uses of Metoclopramide and the extreme risks and uncertainties associated with the drug, Defendant Companies encouraged the sale of and actively promoted the use of the drug for off-label/unauthorized uses.
> ...
> Defendant companies expressly suggested, in their promotion and labeling of Metoclopramide, that Metoclopramide could be given to women during pregnancy, despite ... their actual or constructive knowledge that ... metoclopramide was not approved by the FDA for use during pregnancy.
> ...
> Defendant Companies continued to understate the drug's nature, propensities, and adverse affects [sic], particularly to pregnant mothers and continued to encourage the sale of and actively promote the use of the drug for off-label/unapproved uses, including for treatment during the first trimester of pregnancy.
> ...
> At all relevant times hereto, defendants, or one or more of them, actively promoted Metoclopramide for off-label, unapproved uses, including but not limited to the following, direct-to-physician (and direct to pharmacist promotion) through sales representatives....
> At all relevant times hereto, Defendants, or one or more of them, marketed, promoted, and "pushed" metoclopramide, not as a drug of last resort, but as a drug suitable as an initial therapy and for unapproved uses.

 (Pet. at ¶¶ 14, 30s, 33, 85-86) (emphasis omitted).  Plaintiffs also referred to federal limitations on how drugs may be marketed for off-label purposes.  (Pet. at ¶¶ 8-9).

The import of these allegations is not entirely clear.  To the extent that these allegations simply mean that Defendants promoted metoclopramide with respect to pregnancy in a manner consistent with the FDA-approved label and with FDA regulations, then the claim fails for the reasons set forth above.  But if Plaintiffs are attempting to allege that the Defendants promoted or marketed the drug in a manner *inconsistent* with the label or marketed it for an off-label purpose in violation of federal rules and regulations, the parties have not sufficiently addressed

-8-

the question and the briefing is insufficient at this time for the Court to conclude that such a claim fails as a matter of law.  Defendants simply argue that "[t]hat naked, unfounded allegation altogether fails" to plead a claim with requisite factual specificity.  (Rec. Doc. 120 at 7).[1]  The legal viability of such a claim has not been addressed.

Under these circumstances, it is appropriate to grant Plaintiffs leave to amend.  To reiterate, *Mensing* preempts any claims that Defendants should have provided more or different warnings than those contained in the label and materials approved by the FDA with respect to Reglan.  The Court does reach the question of whether Plaintiffs can bring a state-law tort claim based on alleged promotion of metoclopramide for off-label purposes in violation of federal law.  If Plaintiffs wish to pursue such a claim they should plead sufficient factual content regarding what marketing or promotional representations were made, by which Defendants, to whom, and how those statements violated applicable federal law.  After Plaintiffs have had an opportunity to amend their petition, that question may be ripe for a renewed motion for judgment on the pleadings or a motion for summary judgment.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.  Plaintiffs' petition is dismissed with leave to amend consistent with this Order and Reasons.  Plaintiffs may file an amended complaint on or before January 6, 2012.

New Orleans, Louisiana, this 6th day of   December  , 2011.

*[Signature: Eldon E. Fallon]*

UNITED STATES DISTRICT JUDGE

---

[1] Defendants also point out that any marketing in violation of federal regulations would have resulted in vigorous enforcement action by the FDA.