UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSHUA A. WHITENER, SR., ET AL. | CIVIL ACTION |
| VERSUS | NUMBER 10-1552 |
| PLIVA, INC., ET AL. | SECTION "L" (4) |

## ORDER & REASONS

Before the Court are Defendant Teva Pharmaceutical, Inc.'s Motions to Dismiss for lack of personal jurisdiction (Rec. Docs. 60, 136). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

### I.   BACKGROUND

This pharmaceutical products liability action arises out of congenital injuries to Lucas Whitener, son of Plaintiffs Joshua A. Whitener, Sr., and Lindsey C. Whitener, as well as injuries to Mrs. Whitener, allegedly caused by the anti-emetic drug metoclopramide. Plaintiffs allege that while Mrs. Whitener was pregnant with Lucas, she was prescribed metoclopramide to treat nausea and morning sickness. Metoclopramide is the generic form of the brand-name drug Reglan. The FDA-approved label for Reglan did not include prescription to pregnant women for morning sickness.

Plaintiffs filed suit in the 40th Judicial District Court for the Parish of St. John the Baptist against a variety of pharmaceutical entities alleged to have designed, manufactured, marketed, or sold metoclopramide, as well as the doctor and clinic that prescribed it. (Petition at ¶ 2.) The claims against the doctor and clinic were jointly dismissed in state court on grounds of prematurity (Rec. Doc. 1-3 at 39) and the pharmaceutical Defendants removed to this Court.

Defendant Teva Pharmaceutical Industries, Ltd. ("Teva Limited") filed a motion to

dismiss for lack of jurisdiction and to quash service, which the Court addressed in a prior Order and Reasons. (Rec. Doc. 96). The Court denied the motion to quash service but directed the parties to exchange discovery materials regarding the personal jurisdiction issue. (*Id.* at 11). The Court then ordered supplemental briefing, (Rec. Doc. 102), which the parties have provided. Plaintiffs also filed an amended complaint, (Rec. Doc. 131), although that pleading contains few new allegations relevant to personal jurisdiction over Teva Limited.

## II.  PRESENT MOTION

The Court analyzed Teva's original motion to dismiss for lack of personal jurisdiction and noted that the "materials [available prior to discovery and supplemental briefing] do not appear to establish a *prima facie* case of continuous and systematic contacts with Louisiana." (Rec. Doc. 96 at 9-10). Pursuant to the Court's Orders, Teva Limited provided to Plaintiffs a copy of the deposition of Yaacov (Kobi) Altman, taken in connection with metoclopramide litigation pending in the Court of Common Pleas in Philadelphia, Pennsylvania. Mr. Altman testified as a corporate representative of Teva Limited regarding its contacts with Pennsylvania for the purposes of personal jurisdiction. Thus, the Court noted that "although unlikely to address contacts between Teva Limited and Louisiana, [it] may be relevant to the relationship between Teva Limited and its domestic subsidiary." (Rec. Doc. 96 at 11).

The issue now is whether the state of the record as supplemented raises a *prima facie* case of personal jurisdiction over Teva Limited. Plaintiffs assert that Teva Limited is subject to personal jurisdiction in Louisiana based on direct contacts it has with the state, including purportedly posting job listings for Louisiana positions and being involved with clinical trials conducted partially in Louisiana. Alternatively, Plaintiffs argue that the contacts between Louisiana and Teva USA, a subsidiary, should be imputed to Teva Limited because the two are

essentially the same corporate entity. Teva Limited opposes both theories of general jurisdiction.

## III. LAW & ANALYSIS

### A. Personal Jurisdiction

"The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a *prima facie* case if the district court rules without an evidentiary hearing." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). "Proof by a preponderance of the evidence is not required." *Id.* (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). In resolving personal jurisdiction, the court may review "pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof." *Command-Aire Corp. v. Ontario Mech. Sales & Servs., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992) (citing *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985)). However, the Court must take as true the uncontroverted allegations in the complaint and conflicts between the facts contained in the parties' affidavits, if provided, must be resolved in favor of the plaintiff. *See Johnston*, 523 F.3d at 609 (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)).

A federal court may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant, and (2) the exercise of such jurisdiction comports with due process under the United States Constitution. *See Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999). This Court looks to Louisiana's long-arm statute. "The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits. Therefore, the inquiry is whether jurisdiction

comports with federal constitutional guarantees." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (citing *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)). Due process in the personal jurisdiction context requires that (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

With regard to the minimum contacts inquiry, a defendant's contacts with a forum may be "general" or "specific." *Cent. Freight Lines, Inc. v. APA Trans. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (citing *Alpine View Co. Ltd. v. Altas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)). Specific jurisdiction requires that (1) the defendant has purposefully availed itself of the privileges of conducting activities in the forum state; and (2) the litigation results from alleged injuries that arise out of or relate to those activities. *See Alpine*, 205 F.3d at 215 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The Court previously held that the pleadings and supplemental materials did not suggest specific jurisdiction. (Rec. Doc. 96 at 9). In their supplemental briefing, Plaintiffs do not argue for specific jurisdiction over Teva Limited.

Rather, Plaintiffs argue for general jurisdiction. General jurisdiction exists if a defendant's contacts with the forum state are "substantial and 'continuous and systematic' but unrelated to the instant cause of action." *Cent. Freight Lines*, 322 F.3d at 381 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Jackson*, 615 F.3d at 584 (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). "To confer general jurisdiction, a defendant

must have a business presence in the forum state." *Id.* (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987)). "'General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed.'" *Johnston*, 523 F.3d at 610 (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)). These contacts are to be considered *in toto*, excluding any "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts." *Id.*

The Supreme Court recently addressed general jurisdiction, in only the third opinion on the subject in the past sixty-five years. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2854 (2011) ("In only two decisions postdating *International Shoe* ... has this Court considered whether an out-of-state corporate defendant's in-state contacts were sufficiently 'continuous and systematic' to justify the exercise of general jurisdiction over claims unrelated to those contacts...."). In *Goodyear*, two residents of North Carolina died in a bus accident that occurred in France, allegedly due to a defective tire manufactured in Turkey by a Turkish subsidiary of an American parent corporation. *See id.* at 2850. The decedents' parents filed suit in North Carolina state court against the parent company and three foreign subsidiaries. The American parent corporation did not contest jurisdiction, but the foreign subsidiaries did.

> The foreign subsidiaries did not have meaningful contacts with North Carolina:
>
> In contrast to the parent company, Goodyear USA, which does not contest the North Carolina courts' personal jurisdiction over it, petitioners are not registered to do business in North Carolina. They have no place of business, employees, or bank accounts in North Carolina. They do not design, manufacture, or advertise their products in North Carolina. And they do not solicit business in North Carolina or themselves sell or ship tires to North Carolina customers.

*Id.* at 2852. But some small fraction of the subsidiaries' tires did end up in North Carolina

through distribution by other Goodyear USA affiliates.  *See id.*

The Supreme Court reiterated a number of principles originally espoused in "[t]he canonical opinion in this area," *International Shoe Co. v. Washington*."  *Goodyear*, 131 S. Ct. at 2853.  For a corporation, the "paradigm forum for the exercise of general jurisdiction is ... one in which the corporation is fairly regarded as at home." *Id.* at 2853-54.  "A corporation's 'continuous activity of some sorts within a state,' *International Shoe* instructed, 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id.* at 2856 (quoting *International Shoe*, 326 U.S. at 318).

With that authority in mind, the Court turns to Plaintiffs' arguments.  Plaintiffs contend that they have established a *prima facie* case of general jurisdiction, either through Teva Limited's own contacts with Louisiana, or on an alter ego theory predicated on Teva USA's contacts with Louisiana.

**B.      General Jurisdiction Through Teva Limited's Contacts with Louisiana**

Plaintiffs offer only scattershot conjecture in further support of their argument for general jurisdiction on the basis of Teva Limited's alleged continuous and systematic contacts with Louisiana.  The arguments and materials do not warrant extensive discussion.

Plaintiffs cite a patent for a drug called sevelamer hydrochloride listing a Teva Limited employee as one of four inventors.  Plaintiffs also cite a webpage published by CVS Pharmacies indicating that sevelamer hydrochloride can be used to treat gastrointestinal discomfort.  Because there are CVS Pharmacies in Louisiana, Plaintiffs apparently suggest that somehow this constitutes a meaningful contact between Teva Limited and Louisiana, but that inferential leap is unsupported.  Plaintiffs cite a page from Teva USA's website indicating that "Louisiana Wholesale Drug Co." and CVS Pharmacies are authorized distributors.  Teva USA does not

dispute personal jurisdiction, and the extent to which Teva USA's contacts with Louisiana can be imputed to Teva Limited will be discussed below.  Plaintiffs cite a listing on a third-party employment website for a Louisiana sales representative position with "TEVA Pharmaceuticals."  (Rec. Doc. 104-9 at 3).  Nothing in the posting indicates that Teva Limited, the Israel-based parent company, is the employer.  This vague listing of a single sales representative position with some Teva-affiliated subsidiary does not warrant an inference that Teva Limited directly employs Louisiana residents or has a place of business in Louisiana, which Teva Limited has directly denied by unrebutted affidavit.  Plaintiffs also cite documents related to conduct by other Teva Limited subsidiaries, including Barr Laboratories and IVAX Corp., which are likewise irrelevant to contacts between Teva Limited and Louisiana.

Finally, Plaintiffs cite records from a National Institute of Health website indicating that Teva Limited has sponsored pharmaceutical studies that have recruited participants in Louisiana.  Those studies do not relate to metoclopramide.  This, at least, is an apparent contact between Teva Limited and Louisiana.  But even if this were a significant and ongoing contact, "[a] corporation's continuous activity of some sorts within a state ... is not enough to support the demand that the corporation be amenable to suits **unrelated to that activity**."  *Goodyear*, 131 S. Ct. 2856 (quotation omitted and emphasis added).  Conducting international pharmaceutical trials that may include some participants in Louisiana could give rise to specific jurisdiction if the cause of action arose out of those contacts, but does not approach the level of continuous, systematic contact that would subject a defendant to personal jurisdiction in Louisiana for any cause of action whatsoever.

In short, these supplemental materials do not remotely support the inferences Plaintiffs suggest.  Plaintiffs have not established a *prima facie* case of general personal jurisdiction over

Teva Limited in Louisiana, at least based on any continuous and systematic contacts between the state and Teva Limited itself.

### C. General Jurisdiction over Teva Limited Through Teva USA's Contacts With Louisiana

As an alternate theory, Plaintiffs argue that Teva USA, which does not contest personal jurisdiction, is simply an alter ego of Teva Limited and that the entities are essentially identical. Therefore, Plaintiffs suggest that Teva USA's contacts with Louisiana should be imputed to Teva Limited for the purpose of asserting personal jurisdiction over the parent company.[1]

Ordinarily, "the mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent" based on the subsidiary's contacts with the forum. *See Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990). However, "there may be instances in which the parent so dominates the subsidiary that they do not in reality constitute separate and distinct corporate entities." *Id.* (quotation omitted); *see also Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) ("[A] close relationship between a parent and its subsidiary may justify a finding that the parent 'does business' in a jurisdiction through the local activities of its subsidiaries.").

Although the state and federal tests for corporate alter ego status "are essentially the same," *Century Hotels v. United States*, 952 F.2d 107, 110 n.4 (5th Cir. 1992), the Fifth Circuit recently admonished district courts and litigants in diversity cases to be careful to apply the applicable state-law alter ego test. *See Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330 n. 5 (5th Cir. 2011) (discouraging application of "*Hargrave* factors [which]

---

[1] In *Goodyear*, the Supreme Court declined to address a "single enterprise" theory which would have treated the parent and subsidiaries jointly "so that jurisdiction over the parent would draw in the subsidiaries as well." 131 S. Ct. at 2857.

construe Texas state law" to Louisiana diversity action). Accordingly, the Court will look to Louisiana law.

Louisiana recognizes a number of factors relevant in determining whether a parent and subsidiary corporation should be treated collectively for personal jurisdiction purposes:

> Under Louisiana law, the factors to be considered to determine whether one entity is an alter ego of another or whether two entities are a "single business enterprise" are similar. *Green v. Champion Ins. Co.*, 577 So. 2d 249, 257-58 (La. Ct. App. 1991). They include, but are not limited to, common ownership, directors and officers, employees, and offices; unified control; inadequate capitalization; noncompliance with corporate formalities; centralized accounting; unclear allocation of profits and losses between corporations; one corporation paying the salaries, expenses, or losses of another corporation; and undocumented transfers of funds between entities.

*Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F. 3d 579, 587 (5th Cir. 2010). "No one factor is dispositive." *Id.*[2] Still, "the presumption of institutional independence of related corporate entities may be rebutted by 'clear evidence,' which requires a showing of 'something beyond' the mere existence of a corporate relationship between a resident and nonresident entity to warrant the exercise of jurisdiction over the nonresident." *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) (citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)). "Even where some factors suggest that one entity is the alter

---

[2] The parties frame their arguments in terms of the *Hargrave* factors, which are also "informative regarding imputed jurisdictional contacts among corporations":
> (1) whether the parent owns 100% of the subsidiary's stock; (2) whether the two corporations maintain separate headquarters; (3) whether the parent and subsidiary share common officers and directors; (4) whether corporate formalities are observed; (5) whether separate accounting systems are maintained; (6) whether the parent exercises complete authority over general policy; and (7) whether the subsidiary exercises complete authority over daily operations, including research and development, marketing, and supply.

*Bd. of Adm'rs*, 450 F. App'x at 330 & n.5 (citing *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999)).

ego of another, the maintenance of corporate formalities tips in favor of finding that the entities are not alter egos." *Jackson*, 615 F.3d at 588.

The Fifth Circuit's opinion in *Jackson v. Tanfoglio Giuseppe* is a useful example of the analysis for imputing corporate contacts and the high threshold for disregarding the independence of separate corporate entities. In *Jackson*, the issue was imputing specific jurisdiction contacts from one firearm manufacturer to several related but independent entities. The Fifth Circuit explained the significant entanglements between the related corporations:

> For instance, the Tanfoglio entities appear to have been operated in a way that their brands and products appear identical and their business relationships are deeply intertwined. The Tanfoglio entities shared office space, phone numbers, and the Tanfoglio siblings were officers and directors of each of the Tanfoglio entities. Further, despite the significant business reltationship between the Tanfoglio entities and FIE, FIE employees testified that they could not distinguish between each of the Tanfoglio companies and viewed them as one company. As well, the Tanfoglio entities were indebted to one another through a variety of business transactions....

*Id.* at 587. Despite those connections, the Fifth Circuit did not impute contacts between the entities for the purposes of personal jurisdiction. "[T]here was clear and undisputed evidence that the Tanfoglio companies did not abuse the corporate form, and indeed, followed all of the Italian corporate legalities necessary to maintain distinct entities." *Id.* "[T]here [was] absolutely nothing to suggest that the corporate formalities were not observed at all times." *Id.* at 587-88. Thus, the presumption of corporate independence was not overcome.

With that authority in mind, the Court turns to the present case. As noted above, Plaintiffs draw from the Altman deposition, which addressed the parent-subsidiary relationship between Teva Limited and Teva USA. Teva USA is a wholly-owned subsidiary and Teva Limited owns all Teva USA stock. There is limited overlap between the boards of directors of each entity. The record suggests that although there are some common board members between

-10-

the entities, board meetings are held separately. (Exh. A at 62-63). Teva Limited has a headquarters in Israel and Teva USA has a separate headquarters in Pennsylvania.[3]

Plaintiffs do not present any meaningful evidence that the corporate formalities between Teva USA and Teva Limited are not respected. Plaintiffs merely argue that Teva Limited files a financial report pursuant to SEC regulations that includes financial information about Teva USA, and that Teva Limited purchases insurance policies for itself and its subsidiaries but allocates the expense proportionally to each subsidiary. Plaintiff also argues that Teva Limited's web presence collectively refers to the parent and its subsidiaries as "Teva," and that Plaintiffs' physician was visited by a pharmaceutical representative from "Teva." However, even if corporate entities are "operated in a way that their brands and products appear identical" imputing contacts from one to the other may not be warranted. *See Jackson*, 615 F.3d at 587-88.

With respect to Teva Limited and Teva USA's accounting, the deposition reflects that although Teva USA uploads its own accounting into a database housed in Israel, the operation of that database does not "affect the accounting for Teva U.S.A. in Pennsylvania." (Rec. Doc. 107-1 at 6). Thus, the accounting systems of the two entities are independent, even if there is a central repository that allows preparation of comprehensive reports.

With respect to the degree of oversight that Teva Limited exercises over Teva USA, Plaintiffs cite a number of general policy decisions such as Teva Limited's decision and diligence to acquire a new company but to install that company as a subsidiary to Teva USA. Plaintiffs also cite a standard operating procedure approved by Teva Limited and binding on

---

[3]Plaintiffs argue that the headquarters are "partially separate" because Teva Limited exercises some control over Teva USA's business from Israel. Plaintiffs cite no legal authority for the concept of "partial separation," and the record is factually undisputed that the different entities have physically separate headquarters.

Teva USA; however, the record confirms Teva Limited's response that the operating procedure in question is "a very general policy indeed, and does not infringe on the day-to-day activities" of any subsidiary, (Rec. Doc. 107 at 17). (*See* Rec. Doc. 107-2). In short, none of this evidence suggests anything more than the normal level of general control that a parent company exerts over a wholly-owned subsidiary. *See Bd. of Adm'rs*, 450 F. App'x at 331.

With respect to control of daily operations, Plaintiffs argue that "Teva USA is a 'business unit' of Teva LTD," but that simply begs the question; it would be an unusual wholly-owned corporate subsidiary that did *not* conduct some part of the parent's business, and the law is clear that an ordinary parent-subsidiary relationship will not support imputing contacts for personal jurisdictional purposes. To flesh out that contention, Plaintiffs argue that Teva Limited advertises job positions for its subsidiaries on a global portal, including one position in Louisiana with Teva Respiratory, LLC, a different subsidiary. Plaintiffs also argue that a Teva Limited employee testified in a patent infringement suit filed against Teva USA.

Finally, with respect to the other factors relevant under Louisiana law, Plaintiffs present no argument regarding whether allocations of profits and losses between Teva USA and Teva Limited are unclear; or whether Teva Limited pays the salaries, expenses, or losses of Teva USA; or whether there are any undocumented transfers between the entities.

The Court has reviewed the deposition and materials submitted by the parties as well as their arguments. Plaintiffs have not pointed to any facts supporting any reasonable inference that Teva Limited exercises a degree of control over Teva USA that goes "beyond the subsidiary's mere presence within the bosom of the corporate family." *Bd. of Adm'rs*, 450 F. App'x at 329 (quotation omitted). Plaintiffs have not articulated a *prima facie* case that Teva USA is Teva Limited's alter ego. The presumption that a subsidiary is independent of its parent for

jurisdictional purposes has not been overcome and Teva USA's contacts with Louisiana are not properly attributed to Teva Limited.

**D.     Additional Discovery**

Lastly, the Plaintiffs request additional discovery on the question of personal jurisdiction. Whether to grant additional discovery pertaining to jurisdictional issues is within the court's discretion. *See Freudensprung*, 379 F.3d at 347. Although the Court generally finds it appropriate to grant narrow jurisdictional discovery with respect to issues of personal jurisdiction, it is not apparent that additional discovery will produce anything that would change the above analysis. Plaintiffs already have access to a deposition of a Teva Limited corporate representative who was questioned extensively about the relationship between the parent and subsidiary. The portions of the deposition submitted to the Court do not support a *prima facie* case of alter ego jurisdiction.

Plaintiffs argue that the Altman deposition is not sufficient and that additional discovery is warranted for two reasons. First, Plaintiffs argue that the deposition was not designated to cover Teva Limited's contacts with Louisiana. Even though that is the case, Plaintiffs have not raised any plausible suggestion that a corporate deposition with respect to Louisiana contacts would reveal anything other than the contacts of Teva Limited subsidiaries with the state of Louisiana. Second, Plaintiffs argue that the corporate representative was not aware of certain information, such as Teva Limited's methods for recording adverse events or other drug-safety-related matters. But Plaintiffs do not articulate how that evidence, if obtained through follow-up discovery, would be relevant to the present jurisdictional inquiry. Under these circumstances, the Court finds that additional jurisdictional discovery would be futile.

**IV.     CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Teva Pharmaceuticals Industries, Ltd.'s Motions to dismiss for lack of personal jurisdiction (Rec. Docs. 60, 136) are GRANTED and Plaintiffs' claims against it are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this 18th day of __April__, 2012.

*[signature: Eldon E. Fallon]*

UNITED STATES DISTRICT JUDGE